AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

<table>
<tr><td>In the Matter of the Search of<br><i>(Briefly describe the property to be searched<br>or identify the person by name and address)</i></td><td>)<br>)<br>)<br>)<br>)<br>)</td><td>Case No. 3:20-mc-00507</td></tr>
</table>

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

❑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

❑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|

The application is based on these facts:

❑ Continued on the attached sheet.

❑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ *(specify reliable electronic means)*.
11:36        xxxx

Date: _____May 28, 2020_____

City and state: _____

_____
*Youlee Yim You*
*Judge's signature*

_____
*Printed name and title*

**Attachment A**

**Parcel to be Searched:**

The following U.S. Postal Service parcel, presently in the possession of the U.S. Postal

Inspection Service at the USPIS Portland Domicile, 7007 NE Cornfoot Dr., Portland, OR 97218:

**DESCRIPTION OF THE SUBJECT PARCEL**

**Subject Parcel**

U.S. Priority Mail Express parcel number:    EJ281033272US

Sender name and address:    Mystic Photography
60 Bridgewater Court
Lafayette, IN 47909

Recipient name and address:    Dustin Ice
236 Pearl St. #2
Oregon City OR 97045

Parcel Type:    USPS box with Priority Express sticker

Parcel Weight:    5 pound, 10 ounces



Attachment A    Page 1 of 1

**Attachment B**

**Particular Things to be Seized:**

The following controlled substances, records, documents, and items that constitute evidence, contraband, fruits, and/or instrumentalities of violations of the following federal criminal statutes involving the unlawful use of the U.S. mails with intent to distribute controlled substances and proceeds of the unlawful use of the U.S. mails with intent to distribute controlled substances and proceeds of unlawful activity in violation of 21 U.S.C. §§ 841(a)(1), 843(b) and 846; and 18 U.S.C. § 1952(a)(1), and criminal forfeiture related to drug trafficking, as provided in 21 U.S.C. § 853:

1.    Controlled substances, including marijuana, methamphetamine, cocaine, heroin, and any other illegal controlled substance listed in DEA Scheduling of Controlled Substances.

2.    Currency and proceeds of controlled substance trafficking.

3.    Packaging material and contents.

4.    Any items of identification, records, correspondence, accounts, ledgers, pay-and-owe sheets, or other documents associated with the manufacture, distribution, or possession of controlled substances or the possession or distribution of currency and proceeds of controlled substance trafficking, or with the laundering of monetary instruments.

DISTRICT OF OREGON, ss:          AFFIDAVIT OF SHANE WINDER

## Affidavit in Support of an Application Under
## Rule 41 for a Warrant to Search and Seize Evidence

I, Shane R. Winder, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.      I am a Postal Inspector with the United States Postal Inspection Service (USPIS)

and have been since December 2019.   I am currently assigned to the Portland, Oregon Domicile

Office of the USPIS.   As a Postal Inspector, I am empowered by 18 U.S.C. § 3061 to conduct

investigations and to make arrests for offenses against the United States.   As part of my duties, I

investigate incidents where the United States mail system is used for the purpose of transporting

non-mailable matter, including controlled substances such as marijuana, cocaine,

methamphetamine, and heroin, as well as proceeds of the sale of controlled substances.   My

training and experience include 18 years as a Special Agent.   I was previously employed as a

Special Agent with the Social Security Administration Office of Inspector General, investigating

crimes related to program fraud, waste and abuse.   Previous to that, I was employed by the

United States Postal Service (USPS), Office of Inspector General, responsible for enforcing

statutes regarding property of the USPS, property in the custody of the USPS, the use of the

mails and other postal offenses.   Prior to that, I was a Special Agent with the Department of

State, Diplomatic Security Service, charged with investigating passport and visa fraud.   I am a

graduate of the Federal Law Enforcement Training Center's Criminal Investigation Training

Program, and Covert Electronic Surveillance Program.   Further, I have received specialized

training from the United States Department of Justice Drug Enforcement Administration in

narcotics and the Diplomatic Security Training Center in the investigation of passport and visa

**Page 1 – Affidavit of Shane Winder**

fraud.   I hold a Bachelor's of Science Degree in Criminology from Southern Oregon University.

2.       I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of U.S. Priority Mail Express parcel EJ281033727US (hereinafter "**Subject Parcel**"), for evidence, contraband, fruits, and instrumentalities of violations of the federal criminal statutes involving the Unlawful Use of the U.S. Mail with Intent to Distribute Proceeds of Unlawful Activity, in violation of 18 U.S.C. § 1952(a)(1); the Unlawful Use of a Communication Facility (U.S. Mail) to Distribute Controlled Substances, in violation of 21 U.S.C. § 843(b), and Conspiracy to commit this offense, in violation of 21 U.S.C. § 846; the Distribution of Controlled Substances, in violation of 21 U.S.C. § 841(a)(1), and Conspiracy to commit this offense, in violation of 21 U.S.C. § 846; and criminal forfeiture related to drug trafficking, as provided in 21 U.S.C. § 853.   The parcel is presently in the possession of the U.S. Postal Inspection Service at the USPIS Portland Domicile, 7007 NE Cornfoot Rd., Portland, OR 97218, as described in Attachment A.   As set forth below, I have probable cause to believe that such property and items, as described in Attachment B, will be found in the **Subject Parcel**, as described in Attachment A.

3.       This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.   The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, a review of records related to this investigation, and information gained through my training and experience.

## Applicable Law

4.       Title 18 U.S.C. § 1952(a)(1) provides that it is unlawful to use the mail to

**Page 2 – Affidavit of Shane Winder**

distribute the proceeds of any unlawful activity. Title 21 U.S.C. §§ 841 and 846 provide that it is unlawful to distribute or conspire to distribute controlled substances.   Title 21 U.S.C. §§ 843(b) and 846 provide that it is unlawful to use a communication facility, including the U.S. Mail, to distribute or conspire to distribute controlled substances.   Title 21 U.S.C. § 853 provides for the criminal forfeiture of proceeds and instrumentalities related to drug trafficking.

**Training and Experience on Controlled Substances Sent Through the U.S. Mail**

5.    I know from my training and experience that drug traffickers frequently use U.S. Postal Service Priority Mail Express and Priority Mail services to ship controlled substances, including marijuana, cocaine, heroin, and methamphetamine.   I know from my training and experience that illegal drug recipients often use U.S. Postal Service Priority Mail Express and Priority Mail services to ship the proceeds of the illegal sale of controlled substances, or moneys used or intended to be used to facilitate the illegal sale of controlled substances, in cash, or other controlled substances, to suppliers of controlled substances.   I know from training and discussions with other law enforcement officers that these controlled substances, proceeds of the illegal sale of controlled substances, and funds related to the facilitation of the illegal sale of controlled substances are often found during parcel investigations and interdictions.

6.    Based on my experience, training, and discussions with other law enforcement officers experienced in drug investigations, I know Oregon is a marijuana source state for the mailing of controlled substances to destination locations across the United States.   Current Oregon state laws permitting the recreational and medical growth, purchase, and possession of marijuana provide individuals with significant quantities of marijuana, which can be illegally mailed to other states where marijuana is illegal and less available.   Accordingly, marijuana sales are substantially more profitable outside the state of Oregon than they are inside the state of

**Page 3 – Affidavit of Shane Winder**

Oregon.   I know from my training and experience that controlled substances, especially

marijuana, are frequently mailed from Oregon to other states and that cash payments are mailed

back to Oregon drug suppliers in return.

7.      Based on my experience, training, and discussions with other law enforcement

officers experienced in drug investigations, I know that certain indicators often exist when drug

traffickers use the U.S. mails to ship controlled substances, proceeds of the sale of controlled

substances, or funds to facilitate the sale of controlled substances from one location to another.

8.      Drug traffickers use U.S. Postal Service Priority Mail Express and Priority Mail

services because of the reliability of delivery, speed of delivery, low cost, the customer's ability

to track the package's shipment online, as well as the low risk of detection by law enforcement.

Shippers using U.S. Postal Service Priority Mail Express and Priority Mail services pay for the

benefit of being able to confirm the delivery of the parcel by checking the U.S. Postal Service

website or calling a toll-free number.

9.      I know from my training and experience that U.S. Postal Service Priority Mail

Express is used primarily for business-related mailings.   Unlike typical U.S. Postal Service

Priority Mail Express business mailings, which usually have typed labels, packages containing

controlled substances, proceeds, and/or facilitation funds often have handwritten address

information.   The handwritten label on U.S. Postal Service Priority Mail Express packages

containing controlled substances and/or proceeds usually does not contain a business account

number and/or credit card number.   This is an indication that the sender likely paid cash.   A

credit card or business account number would better enable law enforcement officers to connect

the package to identifiable individuals.   I further know that drug traffickers who use U.S. Postal

Service Priority Mail Express services often either waive or do not request a recipient signature

**Page 4 – Affidavit of Shane Winder**

upon delivery of the mail parcel.   This can allow the parcel to be delivered without the addressee or the addressee's agent having to sign for the parcel, contingent upon the parcel being left in a secure location at the address.

10.    I know from my training and experience that drug traffickers who mail controlled substances, and the drug purchasers who send payment in the form of cash or other drugs, often use false or incomplete information in labeling the parcels.   In this way, drug traffickers can distance themselves from the package containing controlled substances, the proceeds of the sale of the controlled substances, or facilitation funds in the event the package is intercepted by law enforcement.

11.    I know from my training and experience that drug traffickers who mail controlled substances, proceeds of the illegal sale of controlled substances, and facilitation funds are often aware that parcels are inspected by trained canines.   Accordingly, drug traffickers often attempt to wrap their parcels, and the contents of their parcels, in a manner they believe will disguise the odor and contents of the items in the parcels.   In order to conceal the distinctive smell of controlled substances from certified controlled substance detection canines, these packages are sometimes sealed with the use of tape around the seams.   Also, the parcels often contain other parcels which are carefully sealed to prevent the escape of odors.   Sometimes perfumes, coffee, dryer sheets, tobacco, or other strong-smelling substances are used to mask the odor of the controlled substances, proceeds of the illegal sale of controlled substances, and/or facilitation funds being shipped.

### Statement of Probable Cause

12.    On May 19, 2020, I went to the U.S. Postal Service Portland Processing and Distribution Center/Facility (PDC/PDF), located at 7007 Cornfoot Rd, Portland, OR 97218 as

**Page 5 – Affidavit of Shane Winder**

part of my regular investigatory duties.   I reviewed parcels for delivery in Oregon that were

mailed from other states.   I saw that the **Subject Parcel** was addressed from "Mystic

Photography 60 Bridgewater Court Lafayette, IN 47909" and to "Dustin Ice 236 Pearl St. #2

Oregon City OR 97045"   The parcel weighed 5 pounds, 10 ounces, the scheduled date of

delivery was May 19, 2020 before 3 p.m., and the mailer paid $78.10 in cash to purchase the

postage.   I noticed the mailing label was handwritten and it appeared it was addressed from a

business to a private individual.   An image of the **Subject Parcel** is provided below:



13.    The "Signature Required" service on USPS Priority Mail Express parcels requires

the parcel be received by an individual who must sign for the parcel and provide their name.   I

**Page 6 – Affidavit of Shane Winder**

know from my training and experience that drug traffickers who mail controlled substances, and the drug purchasers who send payment in the form of cash or other drugs normally do not request the Signature Required service to avoid law enforcement identifying the true recipient of parcels.   In this way, drug traffickers can distance themselves from the package containing controlled substances or from the proceeds of the sale of the controlled substances in the event the package is intercepted by law enforcement.   I observed the Signature Required box on the label of the **Subject Parcel** was not checked by the mailer.

14.    I conducted open source and law enforcement searches and determined the sender, "Mystic Photography" does not associate to that address.   I conducted open source and law enforcement searches and determined the recipient, "Dustin Ice" does associate with the address.

15.    I reviewed USPS business records and determined customers made two (2) inquiries, from the same Internet Protocol (IP) Addresses, using USPS.com on May 19, 2020 to determine the status of the Subject Parcel.   No one contacted the USPIS to inquire about the status of the Subject Parcel, as of the writing of this affidavit.

16.    On May 19, 2020, at 8:37 A.M., Portland Police Bureau H.I.T. Officer S. Groshong, a Certified Controlled Substance Dog Handler and his certified controlled substance detection dog Rex, responded to the USPIS Portland Domicile located at 7007 NE Cornfoot Dr., Portland, OR 97218.   Inspector David Hardin prepared a "line" of parcels of similar size and appearance to the **Subject Parcel**.   H.I.T. Officer Groshong and his certified controlled substance detection dog Rex "proofed" the line and the area surrounding the line.   Proofing a line of parcels is the process by which a controlled substance dog handler deploys a controlled substance detection dog on a line of control parcels to confirm that none of the control parcels

**Page 7 – Affidavit of Shane Winder**

are emitting the odor of controlled substance the controlled substance detection dog is trained to detect.   Officer Groshong stated Rex did not alert to the presence of the odor of controlled substance on the parcels in the line or the area surrounding the line at that time.   Officer Groshong and Rex left the immediate area and Inspector Hardin put the **Subject Parcel** in the line in a position unknown to Officer Groshong and Rex.   Officer Groshong returned to the line and deployed Rex on the line of parcels.   Officer Groshong told me Rex alerted, in the manner he is trained, to the presence of the odor of controlled substance on the **Subject Parcel**.   Rex did not alert to any of the other parcels in the line.   Officer Groshong and Rex's qualifications, training, and training accuracy rate are set forth in Exhibit 1, attached hereto and incorporated herein.

17.    On May 19, 2020, at 2:15 P.M., Inspector Hardin scanned the **Subject Parcel**, "Seized by Law Enforcement" in the USPS Product Tracking and Reporting (PTR) system. The PTR system allows customers to check and/or receive updates to the progress of parcels as they travel through the USPS delivery system.   The "Seized by Law Enforcement" entry tells the customer to contact the USPIS to make inquiries about the status of seized parcels.

18.    Based on my training and experience, the **Subject Parcel** appears to contain drugs or drug proceeds, based on the positive canine examination results detailed above, the package weight, the recipient address, sender information and other observations discussed in more detail above.   I have probable cause to believe, and do believe, that a search of the **Subject Parcel** will yield evidence of contraband, fruits, and instrumentalities of violations of the federal criminal statutes described above.

/ / / /

/ / / /

**Page 8 – Affidavit of Shane Winder**

**Conclusion**

19.      Based on the foregoing, I have probable cause to believe, and I do believe, that the **Subject Parcel** more completely described in Attachment A, contains evidence of contraband, fruits, and instrumentalities of violations of the federal criminal statutes involving the Unlawful Use of the U.S. Mail with Intent to Distribute Proceeds of Unlawful Activity, in violation of 18 U.S.C. § 1952(a)(1); the Unlawful Use of a Communication Facility (U.S. Mail) to Distribute Controlled Substances, in violation of 21 U.S.C. § 843(b), and Conspiracy to commit this offense, in violation of 21 U.S.C. § 846; the Distribution of Controlled Substances, in violation of 21 U.S.C. § 841(a)(1), and Conspiracy to commit this offense, in violation of 21 U.S.C. § 846; and criminal forfeiture related to drug trafficking, as provided in 21 U.S.C. § 853. As set forth above, I have probable cause to believe that such property and items, as described in Attachment B, will be found in the **Subject Parcel** described in Attachment A.   I therefore request that the Court issue a warrant authorizing the search of the **Subject Parcel** described in Attachment A for the items listed in Attachment B and the seizure of any such items found.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

**Page 9 – Affidavit of Shane Winder**

20.     Prior to being submitted to the Court, this affidavit, the accompanying
application, and the requested search warrant were all reviewed by Assistant United States
Attorney (AUSA) Steven T. Mygrant and AUSA Mygrant advised me that, in his opinion, the
affidavit and application are legally and factually sufficient to establish probable cause to support
the issuance of the requested warrant.


_____
SHANE R. WINDER
US Postal Inspector
United States Postal Inspection Service

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 11:36
a.m. on May 28, 2020.


*Youlee Yim You*
_____
HONORABLE YOULEE YIM YOU
United States Magistrate Judge

**Page 10 – Affidavit of Shane Winder**

# EXHIBIT: 1

April 2, 2020

To Whom It May Concern:

I, Officer Scott C. Groshong, attest the following to be true and accurate to the best of my knowledge and belief, based upon my experience handling K9 Rex and a review of my training and deployment records.

### *POLICE TRAINING*

I, Scott C. Groshong, am employed as a police officer with the Portland Police Bureau and have been a certified law enforcement officer within the state of Oregon in excess of twenty-five years. I currently hold an Advanced Police Officer Certificate from the Oregon Department of Safety, Standards and Training (DPSST). I have been assigned to the Drugs and Vice Division (DVD) for the past twenty years as a narcotics investigator, where my job assignment includes the investigation into violations of the Oregon Uniform Controlled Substance Act 475.840, as well as federal controlled substances violations. My training and experience with narcotics investigations is based upon instructional sessions provided to me by the Portland Police Bureau and the Multnomah County District Attorney's Office regarding narcotics investigations. The above-mentioned instructional sessions included training at the Oregon Board of Police Standards and Training Academy and the Portland Police Bureau Advanced Academy. I have successfully completed an eighty (80) hour basic narcotics investigators' school offered by the United States Drug Enforcement Administration. I hold a Bachelor of Science degree in Criminology from Southern Oregon State University, which I earned in 1992. I have assisted in the execution of at least four hundred and fifty (450) search warrants for illegal controlled substances and have made or have assisted in the arrest of at least five hundred (500) persons for controlled substance violations. Since June of 2008 I have been assigned to the HIDTA Interdiction Taskforce (HIT). The primary responsibility for HIT team is the interdiction of narcotics and drug proceeds transported by couriers through the Portland International Airport, Amtrak train stations, various interstate bus lines and the highways and byways through the Portland Metropolitan area. HIT is also responsible for the interdiction of narcotics and drug proceeds carried through common couriers, such as FedEx, UPS, DHL and other parcel and delivery companies;

### *INITIAL K9 TRAINING ACADEMY AND BACKGROUND:*

In June 2008 I was selected as a drug dog handler for the Drugs and Vice Division. The Portland Police Bureau sent me to a 120 hour Drug Detection School at Hill County Dog Center in Pipe Creek Texas. At Hill Country Dog Center I ultimately selected K9 'Nikko' as my first Narcotics Detection K9. K9 Nikko and I completed the 120 hour course and passed the Hill County Drug Detection Test – becoming a Certified Drug Detection Dog Team. Upon our return to Oregon, K9 Nikko and I passed the Oregon Police Canine Association (OPCA) Detection Dog Certification Test certifying us as a Narcotics Detection Dog Team in the State of Oregon. We took this test and successfully passed it an additional twelve times during the next seven years working together. K9 Nikko and I logged over 750 hours of documented dog training which included more than 4,700 training searches. Nikko was deployed over 2,500 times in our career

**Exhibit 1 – Page 1**

together and assisted in the discovery of more than 3.5 million dollars in hidden narcotics and 1.5 million dollars in drug related proceeds.  K9 Nikko died in August 2015 from cancer.  Following Nikko's passing, Officer Groshong's primary responsibility is as a Narcotics Detection Dog Handler working with drug K9 'Rex'.

### *POLICE DRUG DETECTION DOG REX:*

Beginning in November 2015 Officer Groshong began working with narcotics canine partner Rex.  Rex is a four year old pure bred Belgian Malinois originally purchased from Worldwide Canine, Inc. in Spring Branch, Texas by Gilliam County, Oregon in November 2012.  Deputy Richard Brown of the Gilliam County Sheriff's Office selected Rex as a pre-trained narcotics detection canine.  Deputy Brown told Officer Groshong that he successfully completed a 2 ½ week initial training school with Rex and successfully passed Worldwide's certification on November 21, 2012.  Rex has been trained as a passive alert detection dog, which means he sits as his final response at the source of the drug odors which he has been trained to find.  Rex has been trained to detect the odors emanating from cocaine, crack cocaine, heroin, marijuana, and methamphetamine.  Rex has been trained to reliably locate these drug odors in all types of environments through exposure during his initial training, maintenance training and real life deployments.

In November 2015 the Portland Police Bureau acquired Rex from Gilliam County, Oregon due to the Oregon law change surrounding the legalization of user amounts of marijuana.  The Portland Police Bureau's High Intensity Drug Trafficking Area (H.I.D.T.A.) Taskforce addresses trafficking of significant amounts of narcotics and their proceeds from source states throughout the United States.  The H.I.D.T.A. Taskforce is a federally funded team that focuses on the trafficking of narcotics and their related proceeds via high usage traveling methods.  These methods of trafficking include travel by air, bus, and train as well as shipping via the United States Postal Service and private shippers such as FedEx and the United Parcel Service.

### *CERTIFICATIONS PASSED:*

Deputy Richard Brown and K9 Rex first passed the Oregon Police Canine Association's Certification Test on January 23, 2013 and subsequently passed an additional three times in 2013 and 2014.  Rex and I are required by DVD policy to take and pass the Oregon Police Canine Association (OPCA) Detection Dog Certification Test twice each year. On November 10, 2015 Rex and I passed our first OPCA Drug Detection Dog Certification Test together and have subsequently passed this test 7 additional times. Our most recent OPCA Certification Test was passed on September 3, 2019.  The OPCA Certification Test is recognized in the Oregon Revised Statutes (ORS) and by passing it K9 Rex has been recognized as a "Police Animal" under the ORS definition. Passing the test also certifies Rex and Officer Groshong as a Drug Detection Dog team.  In addition to the OPCA Certification Test, Officer Groshong and K9 Rex passed the California Narcotics Canine Association (CNCA) Certification Test on April 6, 2019.

**Exhibit 1 – Page 2**

*OPCA CERTIFICATION CRITERIA:*

The OPCA Drug Detection Dog Certification Test is designed as a performance based test which specifically measures the team's abilities to locate the source(s) of multiple drug odors in testing areas that reflect, as closely as possible, real deployment environments. It is a single blind test designed to measure the team's ability to clear a controlled negative testing areas, or blanks, which is devoid of drug odor without false positives. Only real drugs are used in the test and they must be five grams or larger. Since the test is conducted in real life environments, distracting odors, masking odors and other proofing odors are naturally present in the testing environments. The teams must search three rooms/buildings – one of which is an unknown blank. They must search three vehicles – one of which is an unknown blank. They must search ten pieces of luggage or parcels – eight of which are blanks. They must search an open area which includes one drug odor.

The Certification Test is quite difficult and controls for false positives and handler cues through the inclusion of the controlled negative testing areas, blind finds and the presence of the distracting, masking and proofing odors. The failure rate for testing teams can be over 30 percent. The handler does not know the number or location of the drugs hidden in the testing areas – or the areas which are blanks. The test is designed to stress the handler to measure the dog's proclivity to offer false positives, false negatives or other strange behaviors under handler stress. In order to pass OPCA Certification testing, the team must score 100 percent in both Phase One (odor recognition) and Phase Two (comprehensive assessment). To score 100 percent the team must successfully locate all of the hidden drug odors in both phases of the test – without alerting to any areas where drugs are not hidden.

*MAINTENANCE TRAINING:*

Rex's maintenance training is ongoing with OPCA trainers and handlers. Normal maintenance training typically occurs on a weekly basis. Officer Groshong gets together with various OPCA Trainers and handlers and we set training problems for each other. This is done so that training duplicates real life – where the handler is doing the training problem 'blind' (i.e. the handler does not know where the drugs are hidden or if the training area is a blank). Training is conducted in all types of vehicles, all kinds of buildings/rooms, and various open areas and on both luggage and parcels/packages.

The maintenance training includes proofing odors, masking odors and unknown blanks which are all designed to measure or prevent false positives and handler cues respectively. In my training and experience, searching unknown blanks and blind drug hides are the single best way to prevent handler cuing of the dog. If the handler does not know where the drugs are hidden he cannot cue his dog into locating them. If the handler does not know the training area is a blank it measures the team's performance in clearing the area without any false positives.

The OPCA seminars provide real life scenario based training and exercises designed to challenge and improve the team. The seminars provide training venues that are new to the team and all the drug finds are done blind. The seminars provide the team an opportunity to run through extreme proofing, extreme masking, large drug quantities and other challenging exercises.  Rex has performed at a nearly perfect level in all maintenance training exercises and during certification testing. If a performance issue were to arise in training, the issue would be addressed in that

**Exhibit 1 – Page 3**

episode, in the following maintenance training episode(s) and would continue until the problem is extinct.

Ongoing maintenance training includes regular currency training.  Currency training follows well established protocols which ensure that alerts to currency are the results of drug odor contaminants only.  This is accomplished by regularly exposing Rex to circulated and uncirculated U.S. currency.  Uncirculated U.S. currency is used to prove that Rex does not alert to the unique odors from the ink, dyes, and paper materials used by the U.S. Mint in the manufacturing of currency.  Circulated currency is used to prove that Rex does not alert to the myriad of contaminants that can be found on bills in circulation.  In training, Rex does not alert to these proofing odors proving that Rex does not alert to currency in circulation.  These training protocols ensure that alerts by Rex to currency in the field are dispositive evidence that the level of drug odor contamination on the currency is higher than that of currency in circulation.

Rex and I have over 644.5 hours of documented drug dog training which includes over 2,710 searches.  Of those 2,710 searches I have documented only three unconfirmed alerts in training-where the reason for the behavior was either misinterpreted as an alert by the handler or some other unconfirmable stimuli prompting this behavior.  Rex accurately locates and alerts to all the hidden drug odors in training over 99 percent of the time. When we miss a hidden drug in training we diagnose the issue and solve it before leaving the search area. I have never noted any injury, illness, or other circumstance that has detracted from Rex's accuracy or ability to locate and alert to drug odor.

***DEPLOYMENT HISTORY:***
Since November 2015, Rex has been deployed over 789 times and has alerted on 399 of them – resulting in an alert to deployment rate of 50.5%.  These deployments include assisting in residential search warrants, vehicle deployments, consent searches and many luggage, parcel and area searches.  More specifically, since November 2015, Rex has been deployed 137 times on vehicles and has alerted to 38 of them – resulting in a vehicle alert rate of 27.7%.  Of these 399 alerts in 789 deployments, 373 of these alerts have been corroborated – resulting in an alert to find rate of over 93.4% percent.  Rex has proven himself to be very reliable in locating hidden narcotic odors, including documented finds concealed in clothing, suitcases, duffel bags, packages, hidden compartments in vehicles, and concealed within residences.

In summary, I believe that Rex has an extremely high reliability rate in that he does not alert on every deployment, but rather, only when drug odor is present.  Rex has consistently demonstrated his ability to locate drug odors in all types of environments and conditions.  With respect to Rex's deployment and alert in this particular case, I did not detect any injuries, illnesses, or other circumstances that would detract from Rex's accuracy.

**Affiant**

Officer Scott C. Groshong #27445-Drug Dog Handler
Portland Police Bureau, Drugs and Vice Division

**Exhibit 1 – Page 4**